UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHANDRA JOSEPH-LACET,

    Plaintiff

v.

                        Case No. 15-CV-13648

NATIONSTAR MORTGAGE and
BANK OF AMERICA,

    Defendants

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

NOW COME the Defendants, Nationstar Mortgage LLC (misnamed by Plaintiff as "Nationstar Mortgage" herein) and Bank of America, N.A. (misnamed by Plaintiff as "Bank of America"), and move to dismiss the Plaintiff's four-count Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Specifically, the Plaintiff's complaint is replete with bare accusations and legal conclusions that are not supported by alleged facts which, if true, could plausibly entitle the Plaintiff to relief on her claims for "Breach of Contract, Fraud and The Fair Debt Collection Practices Act, 15 U.S.C. Section 1692" (Count I); "Bad Faith, Unfair and Deceptive Acts in Violation of M.G.L. c. 93A" (Count II); "Violation of M.G.L. c. 271, sec. 49, Other Massachusetts and Federal Predatory Lending Laws and Other Laws and Regulations" (Count III) and Infliction of Emotional and Mental Distress (Count IV).

### Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief'.") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679.

"[W]hen... a complainant's factual allegations are expressly linked and admittedly dependent upon a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Edwin v. Blenwood Associates, Inc.*, 9 F.Supp.2d 70, 72 (D.Mass. 1998) quoting *Beddel v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

Factual Allegations

The following alleged facts are parsed from the Complaint.

In July of 2003, Plaintiff obtained a $267,400.00 refinance loan from Countrywide Home Loans, Inc. ("Countrywide") secured by a mortgage on her property at 30 Cedar Street, Boston, Massachusetts ("Cedar Street Mortgage Loan") (Cmpl., ¶ 5). In August, 2003, she also obtained another mortgage loan from Countrywide in the amount of $360,000.00 to enable her to purchase "a one family home at 76 Blue Hills Parkway, Milton, Massachusetts" ("Blue Hills Mortgage Loan") (Complaint, ¶¶ 4 (first full paragraph appearing on page 1), 5 and 7).

Plaintiff does not attach copies of either the promissory note or mortgage executed by her and evidencing the Cedar Street Mortgage Loan. Copies of the note and mortgage are attached here as Exhibits A and B respectively (hereinafter the "Note" and "Mortgage" respectively).

The Complaint asserts that the Plaintiff "fell victim" to Countrywide's "practices and agreed to conditions that they now learn are predatory lending practices." (Cmpl., ¶4, 2nd full paragraph commencing at bottom of page 1 and concluding at the top of page 2). Plaintiff states that Countrywide offered interest rates of 5.5% on the Cedar Street Mortgage Loan and 6.0% on the Blue Hills Mortgage Loan whereas, Plaintiff claims, prevailing interest rates at the time "were as low as three point five and four percent" (Cmpl., ¶4, 2nd full paragraph). Plaintiff further asserts that Countrywide told her that she "had to obtain fifteen year mortgages for each mortgage in order to obtain such interest rates" (Cmpl., ¶4, 2nd full paragraph).

Plaintiff asserts, relative to the Cedar Street Mortgage Loan, that Defendants, Bank of America, N.A. ("BANA") and Nationstar Mortgage LLC ("Nationstar") "have conducted deceitful and illegal loan practices" (Cmpl., ¶4, 3rd full paragraph). Specifically, she asserts that "[f]or several years, said lenders have added full missed monthly mortgage payments that

3

Chandra Joseph-Lacet failed to pay to the principal balance of the loan. Said deceitful and illegal practice continuously increased the principal balance of the loan. ("Cmpl., ¶4, 3rd full paragraph).

Plaintiff further complains that "[o]n many occasions, said lenders returned [her] mortgage payments or part of her mortgage payments and/or placed said funds in a partial payments holding status instead of using said funds toward the reduction of the principal and accrued defaulted amount" (Cmpl., ¶4, 4th full paragraph).

Plaintiff further asserts that for many years while the loan was in default, "the lenders would purchase property insurance at a much higher price than the reasonable price that [she] would normally pay." She states that in 2012 and 2013 the "lenders" paid $3,813.00 for lender placed insurance that Plaintiff could have procured for $2,200.00 per year [Cmpl. ¶4, fifth full paragraph]. Plaintiff further asserts that Countrywide "continued to pay for plaintiff's home insurance policies after plaintiff informed [Countrywide] that plaintiff would herself maintain and pay the home insurance policies" [Cmpl., ¶ 10].

Plaintiff asserts that while the loan was in default, the lenders would, instead of mitigating [their] expenses, "incur legal expenses and home inspection expenses and add said wrongful expenses to [her] owed principal balance" (Cmpl., ¶4, 6th full paragraph).

Finally, Plaintiff asserts that Bank of America, and then Nationstar, attempted to "force" her to modify the Cedar Street Mortgage Loan at "predatory interest rates" and "for a new principal amount that added the overdue amount to the principal amount" (Cmpl., ¶4, seventh full paragraph).

Argument

Plaintiff has Failed to Allege Any Cognizable Claims

I. A. Breach of Contract Claim (Count I)

Count I of the complaint fails to articulate or summarize in what manner Defendants are alleged to have breached the terms of the note and mortgage evidencing the Cedar Street Mortgage Loan. Consequently, Defendants are left to cull allegations from the complaint, which, if true could plausibly support a breach of contract claim.

1. Missed Monthly Payments allegedly added to the Principal Balance of the Loan

Plaintiff asserts that Defendants wrongfully added missed monthly mortgage payments to the principal balance of the loan. Plaintiff, however, also attaches to her complaint a complete payment history of the loan commencing with the origination of the Cedar Street Mortgage Loan in July of 2003 through December 2, 2014 as part of Exhibit 2 to her Complaint. As is evident from the documents attached at Plaintiff's Exhibit 2, this payment history was provided to her by letter from undersigned counsel's office dated January 7, 2015 in response to a prior demand letter sent by Plaintiff to Nationstar pursuant to G.L. c. 93A.

Contrary to the Plaintiff's assertions, the payment history reflects a continuously decreasing loan balance commencing with the loan's starting principal balance of $267,400.00 and culminating with a remaining principal balance of $117,820.60 subsequent to the last payment application on June 6, 2014. The payment history does not reflect a single instance where the principal balance of the loan *increased* from one transaction to the next.

Moreover, beyond the general assertion that missed monthly mortgage payments were added to the principal balance of the loan, the complaint is devoid of reference to any specific

payment transaction or transactions in connection with which the alleged principal inflation is alleged to have occurred. The payment history annexed to the Plaintiff's complaint suggests a good reason for this dearth of detail, namely, there were no such transactions where the principal balance of the loan *increased* from the principal balance reflected in prior transactions.

    2. <u>Returned Payments or Payments "Placed in a Partial Payment Holding Status"</u>

While the complaint might fairly be read to contest the *extent* of Plaintiff's default under the note and mortgage, the complaint does not deny the fact that Plaintiff was in arrears in her payment obligations under such instruments at all times relevant to the alleged actions or inactions of the Defendants with which Plaintiff takes issue [Cmpl. No. 4, 4th full paragraph, page 2: "In addition, for many years that the mortgage was in default, . . .; Cmpl. No. 4, 5th full paragraph, page 2: "Bank of America fraudulently added the owed overdue balance to the principal balance."; Cmpl. No. 4, 6th full paragraph appearing at top of page 3: "For approximately the past fifteen months or so, Nationstar Mortgage has also attempted to force Chandra Joseph-Lacet to modify the mortgage principal amount to a new thirty or forty year predatory high interest loan for a new principal amount that added the overdue amount to the principal amount."].

Once again, Plaintiff offers no specific reference to particular payments that she made or attempted to make and that were then returned to her by one of the Defendants or placed in a suspense account. Notwithstanding, the Plaintiff's assertion faces a more fundamental and ultimately insurmountable hurdle in that, even if she were to articulate specific examples of payments tendered and returned or tendered and placed in suspense, the terms of the mortgage instrument authorize the lender to take either of these actions when the loan is in default and the amount tendered is insufficient to bring the loan fully current:

> "Lender may return any payment or partial payment if the payment or partial payments were insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not returned earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure."

See the mortgage at Exhibit B, page 3 of 11, paragraph No. 1 "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges."

Consequently, Bank of America, and subsequently Nationstar, had every right to return mortgage payments to the Plaintiff that were insufficient to bring the Loan current or to hold such funds in an unapplied funds account provided that any such unapplied funds are applied to the mortgage balance not later than immediately prior to foreclosure of the mortgage. Due to the instant litigation, Nationstar has instructed undersigned counsel's office to further postpone the pending foreclosure sale to January 25, 2016.

3. <u>The Terms of the Mortgage Instrument Authorize The Lender to Obtain Hazard Insurance on the Property if Borrower Fails to do so And puts Borrower On Notice That Lender's cost Might Significantly Exceed The Cost of Insurance That the Borrower could otherwise Have Obtained</u>

Plaintiff next laments that "for many years that the mortgage was in default, the lenders would purchase property insurance at a much higher price than the reasonable price that [Plaintiff] would normally pay" [Cmpl., no. 4, 5th full paragraph, page 2]. Specifically, she cites $3,813.00 premiums paid for lender placed insurance in November, 2012 and again in November 2013 versus the $2,200.00 premiums that Plaintiff "normally would pay." Again, however, the Plaintiff complains of something the Mortgage specifically authorizes Lender to do. Moreover,

7

the Mortgage specifically forewarns the Borrower that the cost of lender placed insurance could be significantly higher than the premium the Borrower would otherwise pay. Paragraph No. 5 of the Mortgage, 2nd paragraph, (top of page 5 of 11) provides in relevant part as follows:

> "If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and at Borrower's expense. . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower under this Security Instrument."

Though not raised by the Plaintiff in the Complaint, Defendants note here for the sake of completeness that the Consumer Financial Protection Bureau's Mortgage Servicing Rule applicable to lender/force placed insurance codified at 12 C.F.R. §1024.37 did not go into effect until January 10, 2014 and is therefore not applicable to the 2012 and 2013 disbursements with which the Plaintiff takes issue[1].

4. <u>The Defendants had the Right, Subsequent to Plaintiff's Default under the Mortgage Instrument to Conduct Property Inspections and Incur Reasonable Attorney's Fees to Foreclose the Mortgage</u>

Plaintiff next complains that while she was making an effort to make payments to reduce the overdue balance, the Defendants were incurring "legal expenses and home inspection expenses" and adding such fees to the loan balance rather "mitigating" their expenses [Cmpl., no. 4, 6th full paragraph, page 2]. Plaintiff does not recite any specific examples of such expenditures. The general assertion, notwithstanding the lack of any particular example, is refuted by the terms of the Mortgage instrument.

---

[1] Bureau of Consumer Financial Protection, Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z)(2013), pages 43 and 282.

Under Paragraph 7 of the Mortgage the Borrower is charged with the responsibility of maintaining the Property. Specifically, Paragraph 7 states that "Lender or its agent may make reasonable entries upon and inspections of the Property." In addition, paragraph 9 of the Mortgage (top of page of 11) states that in the event the Borrower fails to perform the covenants and agreements contained in the Mortgage, the "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument." Conducting inspections of the Property while the loan is in default, a fact Plaintiff readily and repeatedly acknowledges in her Complaint, to insure that the Borrower is not committing waste and the Property is not otherwise falling into disrepair falls comfortably within the actions authorized under Paragraph 9 of the Mortgage. Paragraph 9 further provides that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument."

Finally, paragraph 22 of the Mortgage (page 10 of 11) clearly authorizes the Lender to collect from the Borrower reasonable attorney's fees incurred in pursuing its default remedies provided for in the Mortgage including exercise of the Statutory Power of Sale.

B. Fraud Claim (Count I)

Plaintiff Comingles assertions of breach of contract, fraud and violation of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 (hereinafter the FDCPA) in Count I of her Complaint. Again, however, Plaintiff fails to identify in Count I the specific instance or instances of fraud about which she purports to complain. Instead, Plaintiff leaves it to the Defendants and the Court to parse the Complaint for allegations which might plausibly state a cognizable claim for fraud which, if true, would entitle Plaintiff to relief.

9

In paragraph no. 4 of her Complaint, 3rd full paragraph, Plaintiff generally avers that the Defendants "have conducted deceitful and illegal loan practices." She then goes on to cite the various Lender actions discussed at length in the preceding Section of this Memorandum concerning her breach of contract claim, namely missed payments allegedly added to the Principal Balance (something the payment history unequivocally establishes did not happen), returning payments or placing partial payments in an unapplied funds account (activities expressly authorized by the Mortgage Instrument), charging premiums for lender placed hazard insurance coverage over and above what the Borrower would pay (a result the Borrower was expressly warned about in the Mortgage instrument) and incurring fees for property inspection and attorney's fees to enforce lender's default remedies (again, activities expressly authorized by the Mortgage).

None of the foregoing activities constitute breaches of the Mortgage contract much less constitute "fraud".

Plaintiff avers near the end of paragraph no. 4, 2nd to last full paragraph at the top of page 3 of the Complaint that Nationstar:

> "attempted to force [Plaintiff] to modify the mortgage principal amount to a new thirty or forty year predatory high interest loan and for a new principal amount that added the overdue amount to the principal amount. Nationstar also deceitfully attempted to violate the statute of fraud law and related laws by informing Chandra Joseph-Lacet that she did not need to sign documents for a new thirty or forty year mortgage. Nationstar stated that [Plaintiff] simply needed to make three certain monthly payments to enter into a new modified mortgage."

The elements of fraud are " (1) a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiffs to act on this representation, (4) that the plaintiffs reasonably relied on the representation as true, and (5) that they acted upon it to their damage." *Commonwealth v. Lucas*, SJC-11830, page 12 (2015), citing *Cumis Ins. Soc'y,*

*Inc. v. BJ's Wholesale Club, Inc.,* 455 Mass. 458, 471 (2009). Aside from failing to specifically identify what statements of material fact Nationstar made that were allegedly false, the Plaintiff utterly fails to assert that she reasonably relied to her detriment on any statement made to her by Nationstar. At the end of day, Plaintiff readily admits in her Complaint that she "refused to modify the 30 Cedar Street Mortgage."

    C.    Alleged FDCPA Violation (Count I)

The Plaintiff simply adds "violation of the FDCPA" in the title she assigns to Count I of her Complaint but then utterly fails anywhere in the body of the Complaint to identify what conduct on the part of the Defendants allegedly violated the FDCPA or otherwise to plead conduct on the part of the Defendants that, if true, would constitute an FDCPA violation.

II.    93A Claim (Count II)

True to form, Count II of Plaintiff's complaint leaves it to the Defendants and to the Court to cull from elsewhere in the Complaint what actions or inactions of the Defendants were allegedly unfair and deceptive and in violation of G.L. c. 93A. The Lender actions discussed under the heading Breach of Contract (Count I) in this memorandum will not be reiterated here; suffice it to say that if such actions do not constitute breaches of the Mortgage Instrument they are not unfair and deceptive within the meaning of c. 93A.

Plaintiff avers that it was somehow untoward for Nationstar to offer the Plaintiff a loan modification that capitalized her then existing arrears (or, to use Plaintiff's words, a loan modification "for a new principal balance that added the overdue amount to the principal balance"). Defendant is at a loss to understand how such an offer would constitute a 93A violation. Indeed, that is what most loan modifications do, they capitalize or roll into the new principal balance, all or a portion of the arrearages outstanding immediately prior to

11

consummation of the modification. Moreover, Plaintiff's modification offer is just that, an offer which the Plaintiff had the option of declining and which she did, in fact, decline ["Chandra Joseph-Lacet refused to modify the 30 Cedar Street mortgage . . " See Complaint, last full paragraph of paragraph no. 4, page 3].

Plaintiff avers that Nationstar "attempted to force" her to modify the Mortgage. Beyond this conclusory statement, however, Plaintiff offers no predicate facts to explain just how Nationstar attempted to "force" Plaintiff to modify the Mortgage. Such a conclusory statement without any factual predicate to support it falls significantly short of the minimum pleading requirements set forth in the opening Section of this Memorandum.

Finally, we are left with the allegations in paragraphs no. 13 and 16 that Bank of America and Nationstar, respectively, accepted an assignment of the Mortgage loan to itself when each entity "knew or should have known that said mortgage was a predatory mortgage loan that violated plaintiff's consumer rights and Massachusetts and federal laws". Plaintiff, however, fails to define what legal significance the term "predatory loan has" and more specifically, what specific state or federal laws and/or regulations were violated in Countrywide Home Loan, Inc.'s ("Countrywide") origination of the loan and, more importantly, in the Defendant's acceptance of an assignment of the loan.

Massachusetts has a statute that is styled "Predatory Home Loan Practices" codified at G.L. c. 183C, Section 1, et seq. The phrases "predatory loan" or "predatory lending practices" however, are terms which are neither used in or defined in the aforementioned statutory scheme. The statutory scheme does use and define the phrase "high-cost mortgage loan" [see G.L. c. 183C, Section 2] but even if a loan is proven to fall within the ambit of a "high-cost mortgage loan" the making of such a loan is not prohibited in the event the Borrower receives advanced

counseling from a HUD approved third-party non-profit organization and the Lender reasonably believes that one or more of the Borrowers will be able to make the payments as they come due [G.L. c. 183C, §§ 3 and 4].

Plaintiff has not set forth any predicate facts that would render the subject loan a "high cost mortgage loan" much less one that was made in violation of c. 183C. In fact as is evident from the copy of the Note annexed hereto as exhibit A, the Note provides for a fixed interest rate of 5.5% over the life of the loan [see also Complaint, ¶ no. 4, 2nd full paragraph were she acknowledges that the interest applicable to the Cedar Street Mortgage Loan (also referred to the Complaint as the "refinance loan" is 5.5%). Moreover, the Note does not assess any fee, charge or penalty for prepayment(s). These are not the characteristics of a high-costs mortgage loan under G.L. c. 183A. The Plaintiff's lament as stated in the Complaint that interest rates at the time "were as low as three point five to 4 percent at the time" of the origination of the loan hardly renders the subject loan a "predatory loan" or a "high-cost mortgage loan". This allegation at best, even if true, merely expresses the Plaintiff's belief that she could have obtained better loan terms elsewhere.

III.  Violation of G.L. c. 271, Sec. 49 and "Other Massachusetts and Federal Predatory Lending Laws and Other Laws and Regulations (Count III)

Chapter 271, Section 49 of the General Laws is the Commonwealth's criminal usury law applicable to persons or entities who knowingly contract for an interest rate on money lent that is greater than twenty percent (20%) per annum. The law obviously has no application to an obligation incurring interest at the fixed rate of 5.5% per annum.

Aside from G.L. c. 183C which has been addressed in the previous Section of this Memorandum, Defendants should not be left to intuit what other state or federal laws the Plaintiffs believes were violated either in the origination or assignment of the subject loan.

13

Suffice is to say that the Plaintiff's citation to G.L. c. 271, Section 49 simply underscores the depravity of her position in characterizing the loan as a "predatory loan."

IV. Count IV (Infliction of Emotional and Mental Distress)

To prevail on a claim of *negligent* infliction of emotion distress, a plaintiff must establish "(1) negligence; (2) emotional distress (3) causation; (4) physical harm and (5) that a reasonable person would have suffered emotional distress under the circumstances.

One need not go beyond the fact that the complaint fails to allege that the borrower suffered any physical harm to dispose of a negligent infliction of emotional distress claim. Moreover, as a general proposition, a lender in Massachusetts does not owe the borrower any duty of care. *See Sullivan v. Bank of N.Y. Mellon Corp.,* Memorandum and Order Regarding Defendants' Motion to Dismiss, March 19, 2015 (D. Mass. 2015) ("The relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law") citing *MacKenzie v. Flagstar Bank, FSB,* 738 F.3d 486, 495 (1st Cir. 2013).

"To state a claim for *intentional[emphasis added]* infliction of emotion distress, a Plaintiff must allege: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." *Clorite v. Somerset Access Television, Inc.* (D. Mass., 2014) citing *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976)) (affirming dismissal of claim for intentional infliction of emotional distress).

The Plaintiff makes no attempt to plead any predicate facts that would establish the elements of intentional infliction of emotional distress. Aside from the remaining elements there is simply no conduct on the part of the Defendants and identified in the Complaint which could remotely be classified as extreme and outrageous or otherwise "beyond all possible bounds of decency and utterly intolerable in a civilized society."

WHEREFORE the Defendants respectfully request that the Court;

(a) Enter an Order Dismissing the Complaint on all Counts;

(b) Grant such further relief as the Court deems just.

Dated: December 2, 2015

Respectfully submitted,
Defendants,
Nationstar Mortgage LLC and Bank of America, N.A.,
By their attorney,

/s/ John S. McNicholas
John S. McNicholas, Esq.
BBO # 546542
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824-4100
(978) 256-1500 (ext. 203)
jmcnicholas@kordeassoc.com

LOCAL RULE 7.1(a)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), undersigned counsel for the Defendants, Nationstar Mortgage LLC and Bank of America, N.A., hereby certifies that he conferred with Plaintiff's counsel by email and telephone on December 2, 2015, and thereby attempted in good faith to resolve or narrow the issues presented in the Defendant's Motion to Dismiss Plaintiff's Complaint.

/s/ John S. McNicholas

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants if applicable on December 2, 2015.

                                              /s/ John S. McNicholas
                                              John S. McNicholas, Esq.